[No. 24061. *En Banc.* May 15, 1933.]

*In the Matter of the Guardianship of* ANNIE LEONA
TEETERS, *a minor.*[1]

*F. D. Couden,* for appellant.
*L. C. Stevenson,* for respondent.

STEINERT, J.—On December 13, 1928, Eva Teeters
filed a petition in the superior court for King county,

[1]Reported in 21 P. (2d) 1032.

requesting the appointment of herself as guardian of her daughter, Annie Leona Teeters, who was then sixteen years of age. In the petition, it was alleged that the minor's estate, which consisted of real and personal property that had been devised and bequeathed to her under the will of one Al Shed, needed the care and protection of a guardian. On the same day that the petition was filed, the court entered an order appointing Mrs. Teeters as the guardian of the property and estate of her minor daughter. The validity of this order is the principal question involved in this case.

Pursuant to her appointment as guardian, Mrs. Teeters entered upon her trust and proceeded to manage the property and administer the estate. In the course of the proceedings, several orders were entered approving reports filed and authorizing the guardian to take steps with regard to certain situations that then presented themselves.

The estate included real property on which were located two residence buildings, one of which was, during the guardianship proceeding, occupied by the guardian and her family as a home. The mother claims that it was also the home of the daughter. The latter claims that, owing to her mother's attitude toward her, she had sought independent work away from home and had been gainfully employed, supporting herself from the time that she was twelve years old, and that therefore she had not occupied the residence as a home during the greater part of the time of the guardianship proceeding.

On February 25, 1930, the residence in which the guardian and her family were living was destroyed by fire. The property at that time was mortgaged for six hundred dollars. On March 7, 1930, the court entered an order requiring the six hundred dollar mortgage, with accrued interest thereon amounting to $10.67, to

be paid out of the proceeds of the fire insurance policy. On April 1, 1930, an order was entered approving the guardian's report and authorizing her to place a new mortgage on the property. That order authorized the guardian to use the money obtained from the new mortgage, together with the balance of the insurance money, amounting to $889.33, to apply on the cost of erecting a new residence; and further provided that, on condition that the guardian advanced the sum of six hundred dollars represented by the new mortgage, and necessary to complete the new building, she would be permitted to occupy it as a home without the payment of any rental until her daughter reached the age of twenty-one years. On March 24, 1931, an order was entered approving the second report of the guardian and allowing fees to the guardian and her attorneys.

On November 28, 1931, Annie Leona Teeters, then about nineteen years of age, married Vernon Children. It appears that, after their marriage, Mr. and Mrs. Children resided in the house occupied by Mrs. Teeters; the ward objected, however, to Mrs. Teteers' remaining there any longer, or exercising any control over the property.

On January 28, 1932, the guardian filed her final report and petitioned for her discharge. On February 10, 1932, the court entered an order approving the final report, discharging the guardian and exonerating her bond. The order allowed the guardian a credit of $833.32 against the estate, making it a lien against all of the real property and requiring the ward to pay that amount within ninety days. The order further provided that the guardian was to be permitted to occupy the premises until the amount due her from the estate had been paid; and that, if the ward and her husband continued to reside there during the interim, they

should each pay the guardian board and lodging in the sum of twenty dollars per month.

While it appears in the recital of the order that the guardian had personally notified the ward of the time and place of the hearing of her report, it does not appear that the ward was served with a copy of the report or with written notice of the hearing. It is not disputed that the ward was not present at the time of the hearing nor at the time of the entry of the order.

On March 12, 1932, the ward, appearing specially, filed her motion to quash the guardianship proceeding, and to vacate the order appointing the guardian as well as all subsequent reports and orders which in any way affected the property of the ward. This motion was made

" . . . on the ground that the court was without jurisdiction of the person and property of said Annie Leona Teeters Children in said proceedings, and that all of said proceedings and orders entered in the above entitled matter are void for want of jurisdiction of the above named court in the above entitled proceedings."

The matter was transferred to a department of the court other than the one in which the guardianship proceeding had initiated. A hearing was had upon affidavits filed by the guardian and by the ward, and, upon argument of counsel, the court entered its order quashing the appointive order and all subsequent orders made in the guardianship matter. The guardian has appealed from the order to quash.

The question before us is whether the court had jurisdiction to make the order appointing the guardian. That order recited that "due notice of the time and place of hearing has been given according to law." It is not contended by the guardian that the notice required by Rem. Rev. Stat., § 1567, was served upon the

minor or upon the prosecuting attorney, nor that the ward was represented at the hearing by the prosecuting attorney, or by any other attorney, as provided in Rem. Rev. Stat., § 1571. In fact, the statutory ten-day notice could not have been given, because the petition for appointment was sworn to just two days before, and filed on the same day, that the order was entered.

A guardianship proceeding is statutory, and a substantial compliance with the statute is necessary to the appointment of a legally constituted guardian. *Mayer v. Rice,* 113 Wash. 144, 193 Pac. 723. It is admitted that the motion to quash constitutes a direct attack upon the appointive order and the orders subsequent thereto. Hence, the ward is not bound by the recital of due notice in the order, but may show that it was not, in fact, given.

The guardian contends, however, that the ward consented to such appointment. Rem. Rev. Stat., § 1567, provides, in part, as follows:

" . . . or if the petition be accompanied by the *written* consent of a minor of the age of fourteen years or upward consenting to the appointment of the guardian asked for . . . then the court may, upon presentation of such petition and without notice of the hearing thereof, appoint such guardian." (Italics ours.)

The record discloses that no written consent of the ward was ever filed. The affidavit of the ward states positively that she did not consent to the appointment, either in writing or otherwise. The affidavits filed on behalf of the guardian do not aver positively that written consent was ever given by the ward. They only allege argumentatively that, shortly before the hearing on the petition, the ward was in the office of the attorneys representing the guardian, and that she then signed some paper, either in connection with the guard-

ianship proceeding, or else in connection with the Al Shed estate; that, since no necessity was known for her signing any other paper, either in connection with the Shed estate or in connection with the present proceeding, therefore she must have signed a written consent to the appointment of guardian. This is a *non sequitur*. It is, at most, but speculative. The certainty required by the statute can not be made to rest upon speculation.

Counsel for the guardian argues that the statute does not demand that the written consent be filed, but merely *accompany* the petition. We think that it is not too exacting or precise to say that, since the petition itself must be filed, that which accompanies it must also be filed, else it does not indeed accompany it. How else could the written consent accompany the petition than by being attached to it, or else by being filed with it? But be that as it may, certainly the written consent is of equal importance and dignity with statutory notice, and since proof of such notice must be filed, the written consent must likewise be filed. This proceeding is a striking illustration of the necessity of filing such written consent. Obedience to that necessity will obviate litigation such as this; oversight and failure are the seed from which such litigation springs. The legislature required written consent, and the court should not by its construction supply the means by which its mandate is made of doubtful value.

The order discharging the guardian contains a recital to the effect that the ward had theretofore made oral application to the court to require the guardian to surrender the estate, her attitude then being that, because of her marriage, she was entitled to control the property in her own right. The guardian contends that such oral application constituted a general appearance

to the proceeding, and a waiver of any right that may have previously existed to object to the jurisdiction.

Conceding that an order containing such a recital might ordinarily have some effect, in this case it had none whatever, for the ward did not have notice of the hearing at which the order was made. Rem. Rev. Stat., §§ 241, 242. The recital, therefore, did not bind her. That order being void as to her, no basis for the contention that she appeared generally is left.

Moreover, even if we should consider the fact of her oral application, it was wholly without form of law. So far as the record discloses, it was a mere informality, indulged toward one who had no legal standing in a matter then engaging the attention of the court. The occurrence was not of sufficient legal effect to supply a jurisdiction which theretofore did not exist.

The judgment is affirmed.

MAIN, MITCHELL, MILLARD, and BLAKE, JJ., concur.

BEALS, C. J., and TOLMAN, J., dissent.

HOLCOMB, J. (dissenting)—Judge Parker, who is now absent, had prepared the following dissent to the decision in this case, in which I heartily concur, and, to avoid further delay, I adopt it as my dissent, with full credit to Judge Parker:

The appointment of the guardian was by a court of general jurisdiction, which included jurisdiction over the subject-matter of guardianship of minors. The presumption of jurisdiction over the person of the ward, arising by appropriate recitals in the order of appointment, as are contained in this order, can be overcome only by affirmative proof to the contrary. It is not enough to destroy the presumption of jurisdiction so arising that the record, apart from the recitals of the order, fails to affirmatively show such jurisdiction. This record does not, as I see it, affirmatively

show want of appropriate notice to or appropriate consent by the ward prior to the entry of the appointment.

The error of the majority, I think, lies in what to me seems to be the assumption that it must be now shown affirmatively that all the necessary jurisdictional steps were taken before the entering of the order of appointment. This, I think, is not the rule applicable to an inquiry into a question of jurisdiction—such as is here presented.