[No. 33212. Department One. November 3, 1955.]

*In the Matter of the Guardianship of* BETTY WHITISH *et al., Minors.*[1]

*W. B. Magee, Everett O. Butts*, and *Chalmer Walter*, for appellant.

*Gavin, Robinson & Kendrick*, for respondent.

WEAVER, J.—This action was commenced by seven minors, appearing by their guardian *ad litem*, to remove the guardian of their estates and to vacate an order authorizing their guardian to settle damage claims, execute releases, and disburse the proceeds of the settlement.

The show cause order was directed to Vera Whitish, the mother of the minors and the guardian of their estates, with directions to serve a copy of the motion and affidavit of the guardian *ad litem* upon the Richfield Oil Company, "which said Company may respond herein as its interest may appear."

The mother did not appear in the present action. The oil company appeared by counsel and contested the motion of the guardian *ad litem*. The trial court denied the motion and the guardian *ad litem* appeals.

Did the court have jurisdiction to enter the order authorizing settlement of claims, which order was entered October 13, 1950? Specifically, was Vera Whitish the duly appointed and qualified guardian of the estates of the minors on that

date? If she were not such guardian, then the trial court was without jurisdiction to enter the order authorizing her to settle the claims of the minors, and the order is a nullity.

The petition for the appointment of guardian, verified and filed October 13, 1950, by the mother of the minors, alleges that they

". . . are the owners of claims against the Richfield Oil Company and Eugene White, arising out of personal injuries and pain and suffering and other items of damage therefrom sustained by said minors on March 5, 1950, by reason of their being struck by a truck owned by the Richfield Oil Company and being driven by its employee, Eugene White. . . ."

The petition for appointment of guardian continued:

"That there are no assets in the estates of said minors other than the aforementioned claims, and that *after settlement is made with regard to said claims and all creditors paid and after other orders with regard to the disposition thereof, the remaining guardianship estate will not exceed the sum of $500.00.* That under and by virtue of those circumstances no bond should be required of your petitioner in event she is appointed guardian herein." (Italics ours.)

Thereupon, an order appointing guardian was entered; Vera Whitish filed her oath; and letters of guardianship were issued October 13, 1950. The order recited:

"That after the payment of the sums due all creditors rendering services by reason of the injuries to said minors, and other amounts required for their immediate support, the estates of said minors do and will not, in any event, exceed the sum of $500.00. That no creditors' rights are being prejudiced by the appointment of a guardian without bond, and *that no bond should be required* of the said petitioner Vera Whitish as guardian of the estates of said minors." (Italics ours.)

On the same day, October 13, 1950, Vera Whitish, as "guardian of the estates of the above named minors," verified and filed a petition for authority to settle damage claims, execute releases, and disburse funds. In brief, the petition alleged the appointment of Vera Whitish as guardian, the details of the accident in which the minors were injured,

the alleged extent of the injuries suffered by each, the present extent of recovery, the incurrment of $1,205 doctor bills and $1,868.50 hospital bills on behalf of the minors. The petition also alleged that Harry and Hermie Whitish (parents of Vera Whitish, guardian) had incurred expenses of $500, on behalf of the minors; that $463.25 was a reasonable attorney fee to be allowed counsel for the guardian; and that since March 5, 1950 (the date of the accident), the guardian had "required the sum of at least $25.00 per month for each of said [seven] children and that she should be reimbursed. . . ."

The petition to settle claims continued:

"That without admitting any liability, said Richfield Oil Company, a corporation, and Eugene White have offered the sum of $5,500.00 in full and complete settlement of any and all claims against them by reason of the occurrences and injuries involving the above named minors in the accident aforesaid, including all claims of Harry Whitish and Hermie Whitish against the estates of said minors or against your petitioner individually."

In accordance with the petition, the trial court authorized the guardian to settle the minor's claims against the Richfield Oil Company for $5,500. The money was immediately ordered disbursed as follows: $3,073.50 to the doctors and hospital; $500 to Harry and Hermie Whitish; $463.25 to the guardian's counsel; and $1,463.25 to the guardian "individually for the care, support and education of said minor children."

RCW 11.88.100 provides, in part, as follows:

"Before letters of guardianship are issued, each guardian shall take and subscribe an oath and file a bond, with sureties to be approved by the court, payable to the state, in such sum as the court may fix . . .

"When it appears from the petition for letters of guardianship and from the evidence submitted at the hearing thereon that the value of the estate does not exceed five hundred dollars, that the rights of the ward and creditors will not be jeopardized thereby, and that the guardian is a parent of, or a person standing in *loco parentis* to, the ward, the court may order that letters of guardianship be issued without bond."

The wording of the first paragraph of the statute, quoted next above, was adopted in 1917. Laws of 1917, chapter 156, § 203, p. 700. The second paragraph first appeared in 1947. Laws of 1947, chapter 145, § 1, p. 699. Both paragraphs were re-enacted in 1951. Laws of 1951, chapter 242, § 1, p. 764.

 We reject, as specious, the argument that the children had no estate at the time the guardian was appointed. It is apparent that a value of $5,500 had already been placed upon their aggregate claims. We cannot ignore our knowledge of the practice of presenting both petitions to the court at the same time, a conclusion buttressed by the fact that all documents are verified and filed on the same day. True, correct procedure requires that they be presented in proper consecutive order, but it would be pure sophistry to hold that the children had no estate (or an estate of less than $500, either individually or in the aggregate) when considering the petition for appointment of guardian, and immediately, on the other hand, authorizing the guardian to accept an offer of $5,500 in full settlement of their claims. The trial court has notice of the entire record in the cause presently before it. See *Swak v. Department of Labor & Industries*, 40 Wn. (2d) 51, 53, 240 P. (2d) 560 (1952).

 The method suggested in the petition for appointment of guardian, by which the bond is eliminated, is not one authorized by the statute. If, under the statute, we permit a petitioner for letters of guardianship to deduct claimed indebtedness from the *gross* estate of the minor, in order to avoid posting bond, then, by construction, we would be approving the means by which the legislative mandate is made of doubtful value. It is the gross value of the minor's estate, not claimed net value, which determines whether a guardian's bond is necessary. Unless a bond is filed, the ward and creditors have no protection in the event of the defalcation of the guardian, and the directive that the guardian be authorized to pay certain alleged claims gives no protection to either. If the gross assets of the guardianship are later reduced by established claims and authorized disbursements, the trial court may reduce the amount of the bond or eliminate it within the boundaries set by the statute.

Vera Whitish should have been required to file a bond before letters of guardianship were issued to her. A guardian's bond not having been filed, as the statute required, did the trial court have jurisdiction to enter an order directing the putative guardian to settle the minors' claims and execute a valid release?

It appears that this question was first raised under the Washington statutes in *Hatch v. Ferguson,* 68 Fed. 43 (C.C.A. 9th; 1895). There, the circuit court of appeals, after an excellent analysis of the Washington statutes and the rule in various jurisdictions, approved a decree holding invalid a sale of real property by a guardian who had not filed a bond as required by statute. The court said:

"The failure to give a bond, which is by statute made necessary to the creation of the office of guardian, may be considered a jurisdictional defect, which would prevent the nominated guardian from assuming the duties of his office, and the probate court from acquiring, through such guardianship, the control of the ward's estate."

This court in an *En Banc* opinion in *Vanhorn v. Nestoss,* 99 Wash. 328, 169 Pac. 807 (1918), adopted the reasoning of the *Hatch* case, *supra,* and quoted therefrom, in part:

" 'It is not the policy of the statute to extend to the purchaser at a guardian's sale the protection which in many instances is accorded to the innocent purchaser. The protection of the minor is deemed of the first importance. It is intended that the purchaser of the minor's property shall be placed upon inquiry to ascertain that the antecedent steps have been taken in accordance with the law. It is within the power of all to know whether the person who assumes to act as guardian is in fact clothed with the powers of that office. An inspection of the record in this case would have shown that Ferguson could not lawfully represent the Hatch heirs without first giving a bond, and that he had wholly failed to comply with the law in that regard.' "

The trial court in the *Vanhorn* case had ordered certain real property of minors sold by their purported guardian, who had not been required to post bond at the time of his appointment. This court directed that title to the real prop-

erty be quieted in the minors, against the asserted rights of the purchaser of the property, saying

"The statutes in this state, in requiring a guardian's bond, are mandatory. The giving of the bond was essential to the qualification of the guardian, *and without such bond the court had no jurisdiction over the wards' estate.*" (Italics ours.)

In *Mood v. Mader,* 162 Wash. 83, 298 Pac. 329 (1931), the *rationale* of the *Vanhorn* case was adopted, although the question considered was said to be "somewhat the counterpart of the question here presented." This court held that, pending partition proceedings of property in which a minor was interested, an individual, who was appointed as guardian of the minor but who did not qualify or receive letters of guardianship until after the decree in partition, was not the legal guardian of the minor at the time of the partition sale and was qualified to purchase at the sale.

In *In re Teeters,* 173 Wash. 138, 21 P. (2d) 1032 (1933), the appointment of a guardian was quashed four years later for lack of jurisdiction, because written consent of the sixteen-year-old ward was not secured as the statute required. In *Falconer v. Stevenson,* 184 Wash. 438, 440, 51 P. (2d) 618 (1935), this court affirmed a judgment holding for naught a mortgage given by the putative guardian in the *Teeter* case, *supra,* saying that she

". . . could not (although purporting to act as guardian) effectuate a lien on the property by mortgage. She stood as any stranger to the property, and the mortgage executed by her [on the ward's property] was just as ineffectual."

■ We are aware that the wording of the statute considered in some of the cases we have discussed, varies in some respects from the present statute. However, a comparison discloses that the present statute leads more readily to the conclusion that furnishing a bond is a condition precedent to the appointment of a guardian (when the estate exceeds $500), than does the statute considered by the court in the *Vanhorn* case, *supra.* We cannot say that the adoption of the 1947 amendment, permitting the trial court to waive a

bond when the estate does not exceed $500, changes the reasoning of our former decisions.

The order denying the motion of the guardian *ad litem* to vacate the order of October 13, 1950, authorizing settlement of damage claims, execution of releases, and disbursements of settlement proceeds, is reversed, and the cause remanded with directions to grant said motion.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and OTT., JJ., concur.

December 8, 1955. Petition for rehearing denied.

¹Reported in 289 P. (2d) 350.