[No. 38748.    En Banc.    August 3, 1967.]

*In the Matter of the Estate of* TOMMY WISE, *a Minor.*
TOMMY WISE, *Appellant,* v. MEAD W. SCHMOECKEL,
*Respondent.**

*Robinson, Landerholm, Memovich, Lansverk, Whitesides
& Marsh* for. appellant.

*Wayne Hilliard* and *Ned Hall,* for respondent.

WEAVER, J.—This opinion involves two appeals springing
from the same guardianship.

The first appeal is from an order entered November 12,
1965, which purports to correct nunc pro tunc, an order
approving settlement and attorney's fees dated October 30,
1956

> by deleting therefrom the figure "$750.00" as the settle-
> ment approved by the court and substituting therefor the
> figure "500.00."

The second appeal is from an order that grants summary
judgment and dismisses the motion of the guardian ad

*Reported in 430 P.2d 969.

litem to quash the order appointing guardian and to vacate the order authorizing the guardian to settle a claim.

The transactions under scrutiny occurred in 1956. At that time the controlling guardianship statute was Laws of 1951, ch. 242, § 1, p. 764. The statute, then appearing as RCW 11.88.100,[1] provided, in part:

> Before letters of guardianship are issued, each guardian shall take and subscribe an oath and file a bond, with sureties to be approved by the court, payable to the state, in such sum as the court may fix, . . . .
>
> . . . .
>
> When it appears from the petition for letters of guardianship and from the evidence submitted at the hearing thereon that the value of the estate does not exceed five hundred dollars, that the rights of the ward and creditors will not be jeopardized thereby, and that the guardian is a parent of, or a person standing in *loco parentis* to, the ward, the court may order that letters of guardianship be issued without bond.

This statute was considered at length in *In re Whitish*, 47 Wn.2d 652, 289 P.2d 340 (1955), and applied to a fact pattern substantially the same as the one of the instant case.[2]

In *Whitish* seven minors were injured when struck by a truck owned by the Richfield Oil Company. Their mother was appointed guardian *without bond* and authorized to settle the claim of the minors for $5,500, which was ordered disbursed as follows: $3,073.50 to doctors and hospital; $500

---

[1]The wording of the first paragraph of the statute was adopted in 1917. Laws of 1917, ch. 156, § 203, p. 700. The second paragraph quoted above first appeared in 1947. Laws of 1947, ch. 145, § 1, p. 700. Both paragraphs were reenacted in 1951 (Laws of 1951, ch. 242, § 1, pp. 764, 766) and in 1961 (Laws of 1961, ch. 155, § 1). Laws of 1965, ch. 145, § 11.88.100 made material changes in the statute which became effective July 1, 1967. For control of the subject by rule of court, see Rule of Pleading, Practice and Procedure 93.04W, RCW vol. 0, and Special Proceedings Rule for Superior Court 98.16W, RCW Vol. 0 (May 5, 1967), effective July 1, 1967.

[2]We note with interest that although *In re Whitish* was apparently called to the attention of the trial court during the time testimony was being taken, it is not mentioned in the court's oral opinion. It is mentioned in respondent's brief, but no attempt is made to explain or distinguish it.

to the parents of the guardian for expenses incurred on behalf of the minors; $463.25 to the guardian's counsel; and $1,463.25 to the guardian *individually* for the care, support and education of said minor children." (Italics ours.)

The mother was appointed guardian without bond on the theory that after payment of claims "the value of the estate does not exceed $500."

This court directed the vacation of the order authorizing settlement of the damage claims and the execution of the releases on the ground that the guardian was without authority because a bond had not been filed as required by the statute. The court said:

> We reject, as specious, the argument that the children had no estate at the time the guardian was appointed. It is apparent that a value of $5,500 had already been placed upon their aggregate claims. . . .
>
> The method suggested in the petition for appointment of guardian, by which the bond is eliminated, is not one authorized by the statute. *If, under the statute, we permit a petitioner for letters of guardianship to deduct claimed indebtedness from the gross estate of the minor, in order to avoid posting bond, then, by construction, we would be approving the means by which the legislative mandate is made of doubtful value. It is the gross value of the minor's estate, not claimed net value, which determines whether a guardian's bond is necessary.* Unless a bond is filed, the ward and creditors have no protection in the event of the defalcation of the guardian, and the directive that the guardian be authorized to pay certain alleged claims gives no protection to either. If the gross assets of the guardianship are later reduced by established claims and authorized disbursements, the trial court may reduce the amount of the bond or eliminate it within the boundaries set by the statute. (Italics ours.)

We turn now to the facts of the instant case which are governed by the same statute the court considered in *In re Whitish, supra.*

August 18, 1956, Tommy Wise was injured in a bicycle-automobile collision. The automobile was driven by Mead W. Schmoeckel. Shortly thereafter, Mrs. Viola Chatfield, Tommy's mother, employed an attorney (*not* counsel on

this appeal) to handle all legal claims arising from the accident. The lawyer agreed to prosecute the case for a contingent fee of one third of the total recovery. He interviewed the insurance adjuster of the company insuring Mr. Schmoeckel.

Not until October 20, 1965, when the present issues were brought before the trial court, was it known that Mrs. Chatfield's lawyer was paid $90 by Mr. Schmoeckel's insurance carrier for handling the settlement. Mrs. Chatfield knew nothing of this. Upon cross-examination the lawyer testified: "Upon my investigation, I've come to the conclusion there was no liability." Since he was paid by the parties on both sides of the potential lawsuit, we wonder whom the lawyer was representing, for there is nothing to indicate that the double payment of attorney's fees was disclosed to the trial court in 1956.

Although the 1956 petition for appointment of guardian alleges that the minor's "share of the settlement will be the sum of approximately $500," the petition for order approving settlement alleges "that there has been an offer of settlement of $750.00 as a result of an accident," and the order of October 30, 1956 approving settlement "ordered that the sum of $750.00 is approved as a settlement because of injuries sustained in accident of August 18, 1956." The order allowed one third thereof as attorney fees.

Although not so involved, the facts of the instant case are clearly within the principle announced in *In re Whitish, supra*. That the insurance carrier issued two drafts, one for $500 and one for $250, the latter being endorsed by Mrs. Chatfield and delivered to her counsel, is immaterial. The court cannot carve out an exception to *Whitish* and allow attorney fees to reduce the total or gross value of the estate of the minor. The procedure (especially in view of the double payment to counsel) was a flagrant subterfuge to evade the mandate of the statute. The gross estate of the minor was $750. The statute (Laws of 1951, ch. 242, § 1; RCW 11.88.100) then in force, required a bond before the guardian was qualified to act on behalf of the minor.

The nunc pro tunc correctional order of November 12, 1965, and the order of May 20, 1966 granting motion for summary judgment are reversed.

The case is remanded with directions to grant the motion of the guardian ad litem to quash the order appointing guardian and to vacate the order of October 30, 1956, authorizing guardian to enter into a settlement of the minor's claim.

It is so ordered.

FINLEY, C. J., HILL, DONWORTH, HUNTER, HAMILTON, and HALE, JJ., and DENNEY, J. Pro. Tem., concur.

September 28, 1967. Petition for rehearing denied.